# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DEVIN DEVEON SIMS,

        Defendant-Appellant.

UNPUBLISHED
January 16, 2018

No. 334464
Wayne Circuit Court
LC No. 15-008989-01-FC

Before: JANSEN, P.J., and FORT HOOD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals as of right his bench trial convictions of felony murder, MCL 750.316(1)(b), resisting arrest, MCL 750.81d, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 30 to 60 years' imprisonment for the felony murder conviction and 302 days, time served, for the resisting arrest conviction, to run consecutively to the sentence of two years' imprisonment for the felony-firearm conviction. We affirm.

Defendant argues that the prosecution failed to show beyond a reasonable doubt that the killing of Mylin Jenkins was "committed in the perpetration of" a larceny, MCL 750.316(1)(b). Specifically, defendant asserts that there was insufficient evidence to demonstrate that he intended to steal Jenkins's car when he shot Jenkins. We disagree.

"This Court reviews de novo a defendant's challenge to the sufficiency of the evidence supporting his or her conviction." *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014) (citation omitted). "We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. (citation omitted). "This standard applies to bench trials." *People v Harmon*, 248 Mich App 522, 524; 640 NW2d 314 (2001) (citation omitted). "In determining whether sufficient evidence was presented to support a conviction, the reviewing court will not interfere with the fact-finder's role of deciding the credibility of witnesses." *People v Solloway*, 316 Mich App 174, 180; 891 NW2d 255 (2016), citing *People v Wolfe*, 440 Mich 508, 514-515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992).

MCL 750.316(1)(b) provides that an individual is guilty of first-degree felony murder where the "[m]urder [is] committed in the perpetration of, or attempt to perpetrate, . . . larceny of any kind. . . . ."

-1-

The elements of felony murder are (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316(1)(b)." [*People v Bass*, 317 Mich App 241, 267; 893 NW2d 140 (2016).]

Larceny is one of the enumerated felonies in a first-degree felony murder charge. MCL 750.316(1)(b). *Bass*, 317 Mich App at 267. The elements of larceny from a person are: "(a) a trespassory taking and (b) the carrying away (c) of the personal property (d) of another (e) with intent to steal that property." *People v March*, 499 Mich 389, 401; 886 NW2d 396 (2016).

"The felony-murder doctrine does not apply if the intent to steal the victim's property was not formed until after the homicide." *People v Orlewicz*, 293 Mich App 96, 111; 809 NW2d 194 (2011) (citation omitted). "However, 'a murder committed during the unbroken chain of events surrounding the predicate felony is committed 'in the perpetration of' that felony. . . . .'" *Id.*, quoting *People v Gillis*, 474 Mich 105, 121; 712 NW2d 419 (2006). "The murder and the felony need not be contemporaneous; rather, the defendant need only have intended to commit the underlying felony when the homicide occurred." *Orlewicz*, 293 Mich App at 111 (citation omitted). "A factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense." *People v Hawkins*, 245 Mich App 439, 458; 628 NW2d 105 (2001) (footnote and citations omitted). That is, "a defendant's intent can be proved by circumstantial evidence." *Id.* (citation omitted). Further, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind. . . ." *People v Henderson*, 306 Mich App 1, 11; 854 NW2d 234 (2014) (citation and quotation marks omitted).

At trial, defendant testified that he put his nine-millimeter handgun up to the back of Jenkins's head and shot, killing him. According to defendant's testimony at trial, defendant shot Jenkins in the back of the head because Jenkins allegedly grabbed defendant's penis. The fact that Jenkins "was killed by a gunshot to the back of [his] head is sufficient for a rational fact-finder to reasonably infer that" defendant shot Jenkins "with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *Bass*, 317 Mich App at 267. Therefore, the prosecution presented sufficient evidence to satisfy the first two elements of felony murder.

The prosecution was also required to prove that Jenkins was killed while defendant was committing, or attempting to commit, larceny, the predicate felony. *Bass*, 317 Mich App at 267. The prosecution proffered ample evidence to support a finding that defendant either committed the larceny or attempted to commit the larceny. To prove larceny, the prosecution was required to prove that a trespassory taking and carrying away of the personal property of Jenkins occurred. *March*, 499 Mich at 401. After defendant shot Jenkins in the back of the head, defendant walked beside the Chevrolet Malibu because it was rolling and pulled Jenkins out of the car and threw him into the middle of the street. Defendant then drove off with Jenkins's car. Defendant did not have permission to take Jenkins's car. Therefore, the prosecution presented sufficient evidence to demonstrate that a trespassory taking and carrying away of Jenkins's car occurred.

Defendant argues that he did not have the requisite intent to commit a larceny at the time he shot Jenkins. However, the record belies this claim, and there was ample evidence from which the trial court could conclude beyond a reasonable doubt that defendant killed Jenkins "in the perpetration of" a larceny, MCL 750.316(1)(a). Because "[a] factfinder can infer a defendant's intent from his words or from the act, means, or the manner employed to commit the offense[,]" *Hawkins*, 245 Mich App at 458 (footnote and citations omitted), and "minimal circumstantial evidence will suffice to establish the defendant's state of mind[,]" defendant's statements and actions clearly demonstrate that defendant intended to steal Jenkins's car and that he possessed that intent before he shot Jenkins. *Henderson*, 306 Mich App at 11. When Robert Grant, Jenkins, JaiRon Edwards, and defendant went to the liquor store, defendant and Grant went into the store, while Jenkins remained in the car and Edwards went to a nearby gas station. While inside the liquor store, defendant and Grant had a conversation in which defendant told Grant that "[h]e wanted some cigarettes and then he was basically saying like he needed a car." Grant believed that defendant was talking about taking Jenkins's car and told defendant that it "ain't that type of party[.]" When defendant, Grant, and Jenkins made a second trip to the gas station, defendant and Grant were again inside the gas station together. As Grant and defendant were leaving the gas station, defendant said, "I should rob them ho a** n****s." Although defendant denied having said that he needed a car and that he wanted to rob the individuals in the gas station, because he claimed to have known them, the trial court was free to gauge the credibility of the witnesses. *Solloway*, 316 Mich App at 180. Specifically, the trial court found that defendant lacked credibility and that Grant was "frankly a quite credible witness," and that the trial court "was inclined to believe his testimony about the statements the defendant made to him." Further, defendant shot Jenkins in the back of the head after Grant got out of Jenkins's car and was not there to witness the shooting. Defendant then pulled Jenkins out of the car, threw him into the middle of the street, and drove off with Jenkins's car. Coupling defendant's statements to Grant about needing a car and wanting to rob individuals with his actions of shooting Jenkins, removing his body from the Malibu, and driving off in the car, the trial court reasonably concluded that defendant had the intent to steal Jenkins's car when he shot and killed Jenkins. *Hawkins*, 245 Mich App at 458.

Affirmed.

/s/ Kathleen Jansen
/s/ Karen M. Fort Hood
/s/ Michael J. Riordan

-3-